Jason R. Naess, ISBN 8407
Assistant United States Trustee
Brett R. Cahoon, ISBN 8607
Andrew S. Jorgensen, ISBN 8695
United States Department of Justice
Office of the United States Trustee
550 W. Fort St., Ste. 698
Boise, Idaho 83724
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the Acting United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re: | Case No. 22-00355-JMM |
| IDAHO HEALTH DATA EXCHANGE, INC., | Chapter 11 (Subchapter V) |
| Debtor | |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF SUBCHAPTER V DEBTOR'S PLAN OF REORGANIZATION (Dkt. No. 31)**

The Acting United States Trustee ("UST"), objects to confirmation of the Subchapter V Debtor's Plan of Reorganization, Docket No. 31 (the "Plan"), on the grounds identified below.[1]

In general, debtors must prove, by a preponderance of the evidence, that their Chapter 11 Plan meets all applicable requirements of § 1129(a).  As stated by the Ninth Circuit, "The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors."  *Everett v. Perez (In re Perez)*, 30 F.3d

---

[1] The UST reserves the right to raise additional objections at the time of hearing.

1209, 1214 n.5 (9th Cir.1994); *see also Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1358 (9th Cir. 1986).

Subchapter V confirmation requirements incorporate the confirmation requirements of § 1129(a), with some limited exceptions. *See* § 1191. Additionally, a Chapter 11 plan under Subchapter V is subject to the requirements of §§ 1190 to 1194.

1. **Section 1129(a)(7) Issue – The holders of claims in Class 3 will not receive property under the Plan with a value that is at least as much as they would receive if the Debtor were liquidated under Chapter 7.**

Section 1129(a)(7) requires that, for an impaired class, each holder of a claim within such a class must either accept the plan or receive property under the plan with a value that is at least as much as the claim holder would receive in a Chapter 7 liquidation.

Debtor has divided its general unsecured creditors into two classes: Class 2, which includes Orion Health ("Orion"); and Class 3, which includes the remainder of Debtor's general unsecured creditors. Dkt. No. 31 at 9-10. Under the Plan, Orion will receive a total of $900,000 during the 60-month Plan term, via payments of $15,000 a month. *Id.* at 9. After the 60-month Plan term, Orion will receive payments sufficient to satisfy its $2,281,100.43 claim in full. *Id.* On the other hand, all other general unsecured creditors will receive a total of $300,000 during the 60-month Plan term ($5,000 a month), to be split amongst them, *pro rata*. *Id.* at 10. Any portion of the Class 3 claims not paid by the shared $300,000 will be discharged. *Id.* at 14-15. Per the Plan, Debtor's reasoning in dividing its general unsecured creditors in this way is because, while Orion's obligation is unsecured, "it is tied to continued performance by Orion under it's (sic) executory contract." *Id.* at 9.

Debtor's liquidation analysis is provided in Exhibit F to the Plan. *Id.* at 98-99. Under the analysis, Debtor indicates that, in a hypothetical Chapter 7 liquidation, there would be an

estimated $903,525 to be distributed to general unsecured creditors. *Id.* At first glance, it appears the $1,200,000 to be distributed to Class 2's and Class 3's general unsecured creditors during the Plan term is more than the $903,525 that would be distributed to general unsecured creditors in a Chapter 7 case.

Debtor's liquidation analysis, however, does not meet § 1129(a)(7) when recognizing Orion would receive 75% of the distributions to general unsecured creditors under the Chapter 11 Plan even though it only holds roughly 52% of the total general unsecured claims amount. In a hypothetical Chapter 7 case, Orion would not receive the preferred treatment Debtor is offering under the Plan; rather, Orion would receive the same *pro rata* distribution as all other general unsecured creditors. The result would be a significant reduction in the payments to Orion, with an increase in the payments to all other creditors in a Chapter 7 case. The introduction of Orion's claim into the *pro rata* pool in a Chapter 7 case would dilute every other creditor's proportionate share of the unsecured claims. At the same time, the increased distribution to unsecured creditors in a Chapter 7 case, from $300,000 to $903,525, more than makes up the difference.

| Unsecured Creditors | Claim Amount (Scheduled or in Proof of Claim) | Class 3 Claims (Unsecured Claims without Orion) | Pro rata Share of Class 3 (without Orion) | Expected Payments to Class 3 Under Plan | Unsecured creditors' pro rata share in a Ch 7 Case (with Orion) | Expected Ch 7 Payment ($903,525 pro rata; see Dkt. No. 31 at 99) | Difference Between Payment Under the Plan and Under Ch 7 |
|---|---|---|---|---|---|---|---|
| 4medica | $45,000.00 | $45,000.00 | 2.16% | $6,468.83 | 1.03% | $9,308.22 | ($2,839.40) |
| Amazon Web Services | $3,418.06 | $3,418.06 | 0.16% | $491.35 | 0.08% | $707.02 | ($215.67) |
| Briljent LLC | $15,500.00 | $15,500.00 | 0.74% | $2,228.15 | 0.35% | $3,206.17 | ($978.01) |
| C2 Consulting Inc. | $80,000.00 | $80,000.00 | 3.83% | $11,500.14 | 1.83% | $16,547.96 | ($5,047.82) |
| Capitol Health Assocs | $202,421.04 | $202,421.04 | 9.70% | $29,098.37 | 4.63% | $41,870.68 | ($12,772.31) |
| Curreous Innovations* | $958,110.54 | $958,110.54 | 45.91% | $137,730.03 | 21.93% | $198,184.63 | ($60,454.60) |
| Health System Transformation | $78,252.34 | $78,252.34 | 3.75% | $11,248.91 | 1.79% | $16,186.45 | ($4,937.55) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| KPI Ninja | $213,000.00 | $213,000.00 | 10.21% | $30,619.11 | 4.88% | $44,058.93 | ($13,439.82) |
| Orion Health | $2,281,100.43 | | | | 52.22% | $471,844.35 | $1,809,256.08 |
| Paramount | $71,368.35 | $71,368.35 | 3.42% | $10,259.32 | 1.63% | $14,762.50 | ($4,503.18) |
| Pointcare LLC | $80,330.00 | $80,330.00 | 3.85% | $11,547.57 | 1.84% | $16,616.22 | ($5,068.64) |
| Primus Policy Grp. | $5,000.00 | $5,000.00 | 0.24% | $718.76 | 0.11% | $1,034.25 | ($315.49) |
| SPUR Catalyst, Inc | $334,531.37 | $334,531.37 | 16.03% | $48,089.46 | 7.66% | $69,197.63 | ($21,108.17) |
| | $4,368,032.13 | $2,086,931.70 | 100.00% | $300,000.00 | 100.00% | $903,525.00 | |

*Because Debtor contends Curreous Innovations is entirely unsecured, to give the Debtor the benefit of the doubt in this analysis, the UST treats Curreous as entirely unsecured.

Unless each of the non-Orion general unsecured creditors accepts the Plan, then, because they will not receive as much under the Plan as they would receive under a hypothetical Chapter 7 liquidation, the Plan cannot be confirmed. *See* § 1129(a)(7).

2. **Section 1129(a)(11) – Feasibility Concerns.**

Section 1129(a)(11) requires that confirmation not be likely followed by liquidation or the need for further financial reorganization of a debtor unless liquidation is proposed in a plan. If plan confirmation is nonconsensual under § 1191(b), then § 1191(c)(3)(A)(i) also requires a debtor will be able to (or there is a reasonable likelihood they will) make all payments under a plan. A debtor need not guarantee success under a plan, but must at least show, with sufficient, competent evidence, a reasonable likelihood of success. *In re Smitty Inv. Group,* LLC, 2008 WL 2095523 at *5 (Bankr. D. Idaho May 16, 2008). A plan proponent must offer more than speculation about the source of a Plan's income and the purpose of § 1129(a)(11) is to prevent confirmation of visionary schemes that promise more under a proposed plan than the post-confirmation debtor can possibly attain. *Id.* (quoting *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374 (9th Cir. 1985) and *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006)).

Debtor's Financial Projections are attached as Exhibit D to the Plan. Dkt. No. 31 at 91-

US Trustee Objection to Confirmation - 4

96. Part of those projections is a revenue model that relies on year-over-year fee increases (an over 25% increase in fees between 2022 and 2026) and the addition of certain new clients in 2023. *Id.* at 92. If the suggested fee increases can be sustained without a resulting loss in clients, Debtor's model estimates billings in 2025 will be approximately $1,000,000 greater than its 2021 billings. *Id.* That fee generation model, however, is new and starts from an assumption of 2021 revenue that is significantly higher than Debtor's historic revenue, which has been relatively static in recent years.

Debtor attached a draft Statement of Activities for the year 2022 with each filed Monthly Operating Report. *See* Dkt. No. 28, 29, 38, 42. Debtor's records show it generated $1,660,300.14 in 2022 participant revenue through the end of November 2022. *See* Dkt. No. 42 at 30. That amount is close to Debtor's Financial Projections for 2022. *Compare* Dkt. No. 31 at 94 ($1,550,889) *with* Dkt. No. 42 at 30 ($1,660,300.14). Debtor's 2020 Income Tax Return identified $1,767,928 and $1,574,152 in program service revenue in 2019 and 2020 respectively. Dkt. No. 20 at 8. During this case, Debtor provided the UST a draft 2021 Statement of Activities, which shows participant revenue of $1,667,625.34 for the 2021 calendar year. For the last four years, then, Debtor has generated the following in annual client/participant revenue:

| Year | Annual Client/Participant Revenue | Source |
|---|---|---|
| 2019 | $1,767,928 | 2020 Income Tax Return, Dkt. No. 20 at 8 |
| 2020 | $1,574,152 | 2020 Income Tax Return, Dkt. No. 20 at 8 |
| 2021 | $1,667,625.34 | Draft 2021 Statement of Activities |
| 2022 | $1, 660,300.14 | Draft 2022 Statement of Activities (through November), Dkt. No. 42 at 30. |

**Average Annual Client/Participant Revenue over last four years:  $1,667,501.37.**

Debtor's revenue model starts with an assumption of 2021 billings of $1,852,103 and 2022 billings of $2,078.037, both of which are higher than supported by the historic client

revenue.  *See* Dkt. No. 31 at 92.   Of greater concern, however, is an unexplained assumption in the Financial Projections that Debtor's $1,660,300.14 in 2022 client service collections will leap to $3,103,061 in collections in 2023—nearly double the average annual historic collections.  *See* Dkt. No. 31 at 94.   The Financial Projections' fiscal years 2024 and 2025 also rely on significantly higher client service collections than the historic revenues support.  *Id.*

While the Financial Projections' numbers show an astounding increase in client collections, the narrative that accompanies the revenue model identifies only $77,000 in new revenue from new 2022 clients, and $300,000 in potential new revenue from new clients in 2022-2023.  *See id.* at 92.   No other new clients are identified and the explained expected $377,000 increase is far below the over $1,400,000 projected increase shown between 2022 and 2023.   Debtor provides no explanation in the Plan to support its projections and does not meet its burden of showing feasibility under § 1129(a)(11).

The Plan also does not explain a reduction in certain expenses under the plan.   The Plan's sections on "Business Operations of the Debtor," "Means for Implementation of the Plan," "Post-Confirmation Management," and "Feasibility of Plan" are all silent as to any information that would explain the Financial Projections' over $800,000 per year reduction in management-related expenses after Fiscal Year 2022.  *Compare* Dkt. No. 31 at Art. 1, Art. 2.7, Art. 2.8, Art. 3 *with* Dkt. No. 31 at 94-95.   Yet, those reductions are necessary for the Plan to be feasible.   It is unclear where those savings will come from or how the Debtor will continue to effectively operate without its current level of management.   Rather than explain what will be different for the Debtor's operations after 2022, the Debtor simply includes Financial Projections with over $800,000 less in 2023 and later expenses.   Other reductions or adjustments in expenses are also unexplained.   Without additional explanation, parties in interest cannot

adequately evaluate the Plan and the Debtor has not met its feasibility burden.

Lastly, while the Financial Projections allude to fluctuating surpluses and deficits during the Plan Term, *see, e.g.,* Dkt. No. 31 at 95 ("IHDE is expected to generate a cash surplus in 2023 . . . In 2024 IHDE will run a cash deficit in 2024 (sic) and a small cash surplus in 2025."), monthly projections are only provided for calendar year 2023. The limited projections hinder parties in interest in their ability to analyze the risk of non-payment in a given month/year and to assess the Plan's probability for success over the full 60-month term. The Plan should not be confirmed until parties in interest are provided a projected budget for each of the years within the Plan term.

## CONCLUSION

For the reasons specified above, the UST respectfully requests that confirmation of the Plan be denied.

Date: January 20, 2023    GREGORY M. GARVIN
    Acting United States Trustee for Region 18

    /s/ Jason R. Naess
    JASON R. NAESS,
    Attorney for the Acting United States Trustee


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ___January 20, 2023___ I caused the foregoing document to be filed with the Court's CM/ECF system which causes a copy of the foregoing to be served by electronic means on the parties reflected on the Notice of Electronic Filing.


Date: __January 20, 2023__

    _____/s/_____
    JASON R. NAESS