Nicole C. Hancock, ISB No. 6899
nicole.hancock@stoel.com
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Cureous Innovations Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| In re: | Case No. 22-00355-JMM |
|---|---|
| IDAHO HEALTH DATA EXCHANGE, INC. | Chapter 11 |
| Debtor. | Subchapter V |

**CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION**

In its *Objection to Confirmation of Subchapter V Debtor's Plan of Reorganization* (Docket No. 44; the "***UST's Objection***"), the U.S. Trustee (the "***UST***") objects to confirmation of the *Subchapter V Debtor'[s] Plan of Reorganization* (Docket No. 31; the "***Plan***") filed by Idaho Health Data Exchange, Inc. ("***IHDE***" or the "***DIP***") because (i) the Plan does not satisfy the "best interest of creditors test" under Section 1129(a)(7)(A)(ii) of the Bankruptcy Code with respect to the holders of Class 3 General Unsecured Claims and (ii) IHDE has not satisfied the "feasibility" requirement for confirmation of the Plan under Section 1129(a)(11) of the Code.[1]  Cureous

---

[1] Terms defined in the Plan and not otherwise defined in this in this pleading (this "***Joinder and Objection***") have the meanings given to them in the Plan.

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 1
116497728.1 0073566-00001

Innovations Inc. ("**Cureous**"), a creditor and party in interest in this case, agrees with the UST and therefore hereby formally joins in the UST's Objection and incorporates the same by reference, as if set forth herein in its entirety.

Cureous further objects to confirmation of the Plan for three reasons not addressed in the UST's Objection: (I) the Plan fails to disclose the affiliations of its officers with certain of its vendors, creditors and potential recipients of avoidable transfers in breach of Section 1129(a)(5); (II) the Plan's disclosures relating to IHDE's business operations and liquidation analysis are so inadequate and misleading that the Plan violates the requirements of Section 1190(1)(A) and (B); (III) by separately classifying Orion Health's promissory note claim and treating it more favorably than other unsecured creditors' claims, the Plan's classification scheme violates Section 1122(a) and the confirmation requirement of Section 1129(a)(1). In addition, (IV) although already compelling, the two objections to confirmation raised by the UST are even stronger when certain additional facts and circumstances described below are considered.

## ARGUMENT

**I.      THE PLAN'S FAILURE TO DISCLOSE ITS OFFICERS' AFFILIATIONS WITH IHDE'S VENDORS CAPITOL HEALTH ASSOCIATES AND PARAMOUNT CONSULTING VIOLATES SECTION 1129(A)(5) OF THE CODE.**

Pursuant to Section 1191(a) of Subchapter V of the Code, "The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." Section 1129(a)(5), in turn, provides that—

(a)      The court shall confirm a plan only if all of the following requirements are met: ….

> (5)(A)   (i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 2
116497728.1 0073566-00001

> (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
>
> (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Section 2.8 of the IHDE Plan discloses three "Post-Confirmation Officers/Managers of the Debtor"—Hans Kastensmith, Craig Jones, and Jesse Meldru—as well as their titles and post-confirmation compensation by the DIP. The Plan entirely fails, however, to disclose the affiliations of these "Officers/Managers", all of whom appear to be affiliated with two of the DIP's largest vendors, Capitol Health Associates and Paramount Consulting Solutions LLC.

The "About Us" page of the Capitol Health Associates website, *see* https://www.capitolhealthdc.com/about.html, identifies seven "Principles" of Capitol Health, with Kastensmith and Jones being the first and third principles listed. A copy of the "About Us" page from the Capitol Health website, saved on the date of this Joinder and Objection, is attached for the Court's convenience as **Exhibit 1** hereto. Documents recently produced by IHDE to Cureous in response to the latter's ongoing discovery show that Mr. Kastensmith signs agreements between Capitol Associates and IHDE as the "Managing Partner" of Capitol Associates. At this time Cureous has been unable to obtain any publicly available information about Paramount Consulting Solutions, but the documents recently produced by IHDE include contracts signed by Meldru on its behalf. *See, e.g.,* **Exhibit 2** hereto.

The failure to disclose the Officers/Managers' affiliations in this case is particularly troubling given the substantial amounts that IHDE has paid and is continuing to pay to Capitol Health and Paramount Consulting. In response to Cureous's interrogatories, on January 23 IDHE produced the lists of payments made to Capitol Health and Paramount Consulting during the

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 3
116497728.1 0073566-00001

preceding two years (including the period since the DIP's petition date), copies of which are attached hereto as **Exhibit 3**. The lists do not include totals, so Cureous's counsel prepared the Excel versions of the lists of payments with certain totals included that are attached as **Exhibit 4**. According to such Excel versions of the lists, IHDE has paid Capitol Health over $3,366,000 and has paid Paramount Consulting over $900,000 over the last two years. *See* Exh. 4 at 1-3.

The Plan does not make any disclosure of the relationships between IHDE's Officers/Managers and their affiliations with Capitol Health and Paramount Consulting in clear disregard of Section 1129(a)(5) of the Code. And, to the extent either or both of Capitol Health and Paramount Consulting are determined to be insiders of IHDE, additional disclosure is required under Section 1129(a)(5)(B) regarding the nature of their compensation.

**II.     THE PLAN'S DISCLOSURES ARE SO INADEQUATE AND MISLEADING THAT IHDE HAS NOT MET ITS BURDEN OF PROVING THAT THE PLAN SATISFIES THE SUBCHAPTER V PLAN CONFIRMATION REQUIREMENTS.**

Pursuant to Sections 1181(b) and 1187(c) of the Code, Subchapter V plans of reorganization may be proposed and voted on by creditors without approval of a separate disclosure statement, unless the Bankruptcy Court orders otherwise for cause. Notwithstanding the omission of a disclosure statement requirement under Subchapter V, however, Section 1190(1) of the Code provides that a plan filed under subchapter V "shall include—(A) a brief history of the business operations of the debtor; [and] (B) a liquidation analysis[.]" The Plan includes several pages of history relating to IHDE's business operations and particularly the events leading to the filing of its bankruptcy case, as well as a liquidation analysis, but such terms are so incomplete and misleading in certain respects that the Court should find that IHDE has not satisfied the requirements of Section 1190(1).

**A. The Plan's Disclosures Regarding IHDE's Business Operations are Inadequate and Misleading**. Without limitation to its other deficiencies, the Plan never actually describes IHDE's day to day business operations (such as describing its organizational structure and employees, other than its three Officers/Managers) or provides any information regarding IHDE's competition, prospects for growth (or retrenchment), or strategy.

Instead of truly describing IHDE's business, the Plan focuses on the regulatory framework in which IHDE has operated and devotes an inordinate amount of attention to the litigation between the DIP and Cureous. While that litigation certainly resulted in the attachment of about $470,000 of the IHDE's funds, the attachment is small in comparison to other much more substantial events that the DIP devotes little attention to or explanation of. For example, at page 3 of the Plan, IHDE refers to "IDHW's unilateral reduction of the Support Act contract [with IHDE] from $16.3MM to $10.5MM in contract value, with a further surprise reduction of contract value to $9MM two weeks before the expiration of the contract", yet provides no real explanation why the IDHW took such action, or how (if) IDHE challenged the $7.3 million reduction in support from the state.

Similarly, on page 4 of the Plan IHDE complains that it "negotiated a contract grant commitment of $8MM with an option for further commitment" from an unnamed "private organization". The "private organization" required IHDE to provide $2MM of pledged collateral, which appears to have been returned to IHDE as part of a settlement of claims, though that is not entirely clear. As with IHDE's grievances about its treatment by the IDHW, this dispute involved millions of dollars—far more than the amount at issue in the Cureous dispute—yet no real detail is provided, not even the name of the other party.

Instead of providing plain and clear explanations of these bigger disputes with greater long-term consequences for the DIP, IHDE prefers to focus on its issues with Cureous, trying to make

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 5
116497728.1 0073566-00001

Cureous a scapegoat for IHDE's failure, and the DIP does so in a one-sided and misleading way. Among the many facts and procedural aspects of the Cureous litigation, two critical points are clear—and omitted from Plan. First, Ada County District Judge Cynthia Yee-Wallace wrote a detailed 14-page Memorandum Decision and Order granting Cureous's Application for Prejudgment Writ of Attachment, a copy of which is attached hereto as **Exhibit 5**. Rather than describe its position as a partisan in the litigation, Cureous refers the Court to the Memorandum Decision for a neutral judge's assessment of the merits. Second, as described in the Memorandum Decision, the State of Idaho remitted three years of contract payments to IHDE that were specifically earmarked for payment to Cureous. As explained by Judge Yee:

> This is not a typical contract case. This is a case in which a State agency—DHW—has undisputedly advanced taxpayer money for services specifically earmarked to go to a specific vendor, Cureous, to provide specific services to the State for a three-year period. There is no dispute that such money was advanced to IHDE. Cureous has shown a reasonable probability of succeeding on the merits of its breach of contract claim and a writ of attachment is warranted under the unique facts of this case.

Exh. 5 at 12. IHDE filed a motion for reconsideration of Judge Yee's decision, which was denied.

    **B.**    **The Plan's Liquidation Analysis is Grossly Incomplete**. The Plan also fails to include a meaningful liquidation analysis because it provides no assessment of possible avoidance actions against anyone other than Cureous and attributes no value to any IHDE assets other than $10,000 of office equipment and the preference claim against Cureous.

    Section 2.5 of the Plan ("Projected Recovery of Avoidable Transfers")—less than three full lines of text in total—states that the DIP is pursuing recovery of the allegedly preferential attachment by Cureous. That's the extent of the disclosure; three lines, entirely focused on Cureous. There is no discussion of any other possible avoidance actions, or even a statement that the DIP and its counsel have examined possible avoidance actions.

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 6
116497728.1 0073566-00001

Cureous cannot state with confidence that there are viable avoidance actions to be pursued in this case, but there are reasons to believe that may be the case. Among other things, IHDE made millions of dollars of payments to its largest vendors—Orion Health, Capitol Associates, and Paramount Consulting—in the 90 days and the year prior to the DIP's bankruptcy filing. Some of the payments were labeled "partial payments" and others appear to have been made irregularly, as shown in **Exhibit 3** (prepared by IHDE). **Exhibit 4** (prepared by Cureous's counsel) shows the amounts of payments IHDE made to these vendors during the 90-day and one-year preference periods, and the payments appear to have been disproportionately large in the 90-day period immediately preceding the DIP's bankruptcy filing:

| Vendor | 12 Months' Payments | 3 Month Average | 90 Days' Payments | Difference |
|---|---|---|---|---|
| **Paramount Consulting** | $339,302 | $ 84,825 | $114,470 | $ 29,644 |
| **Capitol Associates** | 941,151 | 235,288 | 333,739 | 98,451 |
| **Orion Health** | 884,062 | 221,015 | 340,837 | 119,821 |
| **TOTAL** | **$2,164,515** | | | **$247,916** |

The increased amounts of payments during the 90-day preference period, when compared to the three-month average, implies that preferences may have been paid. And, because some or all of the vendors may be insiders of the DIP based on their relationships with IHDE's Officers/Managers, the one-year look-back period may apply to more than $2 million of payments.

There also may be fraudulent transfers to be pursued in this case. Item 13.2 of IHDE's Statement of Financial Affairs (Docket No. 1 at page 58 of 86) shows "Various cash payments" totaling $277,651.45 made outside the ordinary course of business to "BeyondHIE, Inc. c/o Givens Pursley" in 2021 and 2022. In a press release issued by IHDE dated May 20, 2021 (available on IHDE's website on p. 2 of "Resources | News and Events" at https://idahohde.org/2021/05/20/new-joint-venture-poised-to-transform-health-care-and-improve-outcomes/), BeyondHIE is described

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE
U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 7
116497728.1 0073566-00001

as a nonprofit organization and a "joint venture" with Orion Health and two other health care organizations. A copy the press release is attached as **Exhibit 6** for the Court's convenience. BeyondHIE is not shown as a subsidiary or asset of IHDE, raising the issue whether IHDE received any value in exchange for the $277,651.45 IHDE paid to BeyondHIE, c/o Givens Pursley.

The DIP's failure to attribute any value whatsoever to its business and intangible assets, apart from about $10,000 of used office equipment, also raises questions about the sincerity of the DIP's efforts to value its assets and the quality of the Plan's disclosure. Considering the millions of dollars of grants and revenues received by IHDE and described in the Plan, it is remarkable to consider that IHDE has no valuable assets to show for it. Did *all* of the money go to pay the DIP's Officers/Managers and its vendors? What is clear, however, is that the Plan provides no description of how the DIP reached the conclusion that its business and intangibles have no value. There is no indication whether IHDE sought bids for its assets, asked for-profit competitors whether they might want to purchase the business, or otherwise attempted to value its assets.

### III. THE PLAN'S CLASSIFICATION SCHEME VIOLATES SECTION 1122(a) BY SEPARATELY CLASSIFYING ORION HEALTH'S UNSECURED NOTE CLAIM.

Section 1122(a) of the Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." The corollary to this rule is that similar claims should not be classified and treated differently. As explained by the leading Ninth Circuit case concerning classification, "Whether the issue on appeal is denial of separate classification or approval of separate classification, the question resolved by the bankruptcy court is the same: are the claims substantially similar?" *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir.1994).

In this case, the Plan separately classifies Orion's unsecured promissory note claim (in Plan Class 2) and treats it more favorably than all other Unsecured Claims (which are placed in

Class 3). *See* Plan at 9-10. IHDE justifies the special treatment of Orion's claim "because it is tied to continued performance by Orion under it's [sic] executory contract, it is classified separately from other unsecured creditors (which do not have the same continued performance contingencies)." It is not clear whether that is correct.

Cureous recently obtained a copy of the Orion promissory note dated December 2, 2020 (the "*Orion Note*") through discovery, as well as a document titled "Amendment No. 2 to Software as a Service Agreement and Cancellation of Promissory Note" (the "*Orion Note Amendment*"). Copies of the Orion Note and the Orion Note Amendment are attached hereto as **Exhibits 7** and **8**, respectively. The Orion Note appears to evidence a plain vanilla loan, referring to Orion as the "Lender" and IHDE as the "Borrower"; providing for a 2.5% "loan origination fee"; stating a January 1, 2022 "Maturity Date"; and containing customary "Events of Default". Significantly, the Orion Note makes no reference to any other contract or agreement between IHDE and Orion.

The parties appear to have signed the Orion Note Amendment on March 30, 2022, almost fifteen months after the Maturity Date of the Orion Note. Apparently IHDE was unable to repay the loan evidenced by the Orion Note, so the parties folded the outstanding about the loan into their "Software as a Service Agreement" ("*SaaS Agreement*") through the Orion Note Amendment. Significantly, the loan appears to have been in default for more than a year, yet the SaaS Agreement remained in effect. These circumstances present the legal issue whether, by folding an outstanding debt into an existing executory contract, the debt can be made part of the executory contract that must be performed after a bankruptcy filing, failing which the nondebtor party may terminate performance. In other words, can the form of a debt be recharacterized in a manner that prevails over its history and substance?

Probably not, but the issue does not need to be reached in this case because Orion's failure to terminate the SaaS Agreement during the fifteen months between the Maturity Date of the Orion Note and the date of the Orion Note Amendment shows that Orion is willing to provide services to IHDE under the SaaS Agreement between them, regardless of the ~$2 million loan debt. Accordingly, there does not appear to be a proper basis for IHDE to favor Orion over all of its other unsecured creditors, and the Plan thus violates Sections 1122(a) and 1129(a)(1) of the Code.

## IV. ADDITIONAL FACTS SUPPORT THE UST'S OBJECTION.

Cureous has joined in the UST's Objection in part to avoid the needless repetition of the UST's clearly presented arguments against Plan confirmation. While not wanting to repeat such arguments, however, Cureous desires to supplement certain aspects of the UST's Objection.

**A. The Plan is Not in the Best Interest of Class 3 Creditors.** With respect to the UST's first objection to the Plan—that it fails to meet the best interest of creditors test under Section 1129(a)(7)—there are at least _____ additional reasons why a Chapter 7 liquidation of IHDE may be better than the Plan for Class 3 creditors.

https://casetext.com/case/in-re-sierra-cal: "While plan proponents may be reluctant to disclose potentially avoidable transfers that they prefer not to challenge, every plan proponent who would rely on the "best interests" test must include a liquidation analysis in the disclosure statement. As the § 502(d) question can be central to the hypothetical chapter 7 liquidation, it must be addressed in the disclosure statement as part of the liquidation analysis, if only to assert that there are no known potential § 502(d) disabilities or that the known § 502(d) disabilities would not affect the liquidation

analysis with respect to a particular class." In re Sierra-Cal., 210 B.R. 168, 176-77 (Bankr. E.D. Cal. 1997)

**B.      The Plan is Not Feasible.** The UST's second objection to the Plan is that IHDE has not satisfied the "feasibility" requirement for confirmation of the Plan under Section 1129(a)(11).  =.  Plan funding depends on $470K recovery from CI in April!!!

## CONCLUSION

For the foregoing reasons, Cureous respectfully requests that the Court refuse to confirm the Plan at this time. The Plan should not be confirmed unless or until IHDE (i) provides the disclosures required by Section 1129(a)(5) about its Officers/Managers' affiliations, (ii) expands and corrects the disclosure regarding its business operations and expands its liquidation analysis to include consideration of all appropriate avoidance actions and other assets, (iii) treats all of its unsecured creditors, including Orion Health, alike, and (iv) resolves the issues raised by the UST's Objection, including particularly proving that (a) the Plan satisfies the best interests test and (b) the Plan is feasible regardless of the outcome of the Cureous preference litigation.

DATED:  January 26, 2023.

STOEL RIVES LLP

/s/ Nicole C. Hanock
Nicole C. Hancock

Attorneys for Cureous Innovations Inc.

**Exhibits:**

1. "About Us" page from Capitol Health Associates' website
2. Example of contract signed by Jesse Meldru for Paramount Consulting

CUREOUS INNOVATIONS' JOINDER IN OBJECTION TO CONFIRMATION BY THE U.S. TRUSTEE AND FURTHER OBJECTIONS TO CONFIRMATION OF PLAN - 11

116497728.1 0073566-00001

3. Lists of payments made to Capitol Health and Paramount Consulting
4. Excel calculation of amounts paid to affiliates
5. Memorandum Decision and Order Granting Plaintiff's Application for Prejudgment Writ of Attachment
6. IHDE Press Release re BeyondHIE
7. Orion Note
8. Orion Note Amendment

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on January 26, 2023, I filed the foregoing electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jason Ronald Naess on behalf of U.S. Trustee US Trustee
Jason.r.naess@usdoj.gov

Matthew Todd Christensen on behalf of Debtor Idaho Health Data Exchange
mtc@johnsonmaylaw.com

Matthew W. Grimshaw on behalf of Subchapter V Trustee
matt@grimshawlawgroup.com

US Trustee
ustp.region18.bs.ecf@usgoj.gov

                                                /s/ Nicole C. Hancock
                                                Nicole C. Hancock