Matthew T. Christensen, ISB: 7213
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho  83702
Telephone: (208) 384-8588
Facsimile:  (208) 629-0157
Email: mtc@johnsonmaylaw.com

Attorney for Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In re: | Case No. 22-00355-JMM |
|---|---|
| IDAHO HEALTH DATA EXCHANGE, INC.,<br><br>                   Debtor. | MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) |

**Notice of Motion for Approval of Compromise and
Opportunity to Object and for a Hearing**

No Objection. The Court may consider this request for an order without further notice or hearing unless a party in interest files an objection within 21 days of the date of this notice. If an objection is not filed within the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice or hearing.

Objection.  Any objection shall set out the legal and/or factual basis for the objection. A copy of the objection shall be served on the movant.

Hearing on Objection. The objecting party shall also contact the court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

## MOTION FOR APPROVAL OF COMPROMISE

Pursuant to Fed. R. Bankr. P. 9019, the Debtor-in-Possession, by and through its counsel of record, Johnson May, moves the Court for approval of a compromise between the Bankruptcy Estate and Creditor Cureous Innovations, Inc. ("CI"). Through this compromise and upon the Court's approval the Estate will release all claims against CI, CI will release all claims against the Estate, and the parties will split the funds which the Ada County Sheriff attached prior to the bankruptcy petition, with each party receiving approximately half of the funds. In support of this Motion, the Debtor alleges the following:

## BACKGROUND FACTS

CI is a healthcare technology and data company that licenses and provided subscriptions for interoperability software, and previously contracted with IHDE to provide software solutions. Prior to IHDE filing the Bankruptcy Case, CI filed a complaint against IHDE in Ada County Case No. CV01-21-15209 (the "Ada County Case"). In the Ada County Case, CI obtained a pre-judgment writ of attachment which directed the Ada County Sheriff to seize funds from IHDE's bank account. Pursuant to the writ of attachment, the Ada County Sheriff seized $469,767.83 in funds from IHDE's bank account, which the Ada County Sheriff continues to hold pending further court order (the "Seized Funds").

IHDE filed an adversary proceeding in the Bankruptcy Court seeking to recover the Seized Funds pursuant to 11 U.S.C. §547 – Adversary Case No. 22-06018-JMM (the "Adversary Case"). In the Adversary Case, IHDE also objected to CI's claim in the Bankruptcy Case, which claim was based on the prior contractual relationship between IHDE and CI. CI responded to the Adversary Case and disputes IHDE's avoidance claim and objection to CI's claim. CI's response in the Adversary Case asserts the same contract-based claims that were made in the Ada County Case.

Rather than proceed to trial on all issues, the parties have agreed to settle the disputes between them. The compromise is explained in full detail on ***Exhibit A*** attached hereto.[1] In general terms, however, the proceeds attached by the Ada County Sheriff will be split between the parties, with CI receiving $235,000.00 and IHDE receiving $234,767.83. CI agrees to withdraw its Proof of Claim in the bankruptcy case and otherwise waive and release any further claim against IHDE. Both parties will stipulate to dismiss both the Ada County Case and the Adversary Case. For the reasons detailed below, the Debtor believes that this is a fair compromise of the various issues related to these parties and is in the best interest of creditors of the estate.

## PROPOSED COMPROMISE

Subject to Court approval, the Trustee asserts that the proposed settlement is a "fair and equitable" resolution of the dispute, based upon factors such as: the probability of successfully litigating the claims, difficulty in enforcement of a judgment, the complexity, expense, and delay of the litigation, the risk of non-collection, and the paramount interest of creditors, as analyzed below. *See In re: Marples*, 266 B.R. 202, 206, 01.3 I.B.C.R. 116, 118 (Bankr. D. Idaho, 2001); *Martin v. Kane (In re: A&C Properties)*, 784 F.2d 1377, 1381-83 (9th Cir., 1986).

## PROBABILITY OF SUCCESSFULLY LITIGATING THE CLAIM

There are essentially two "claims" at issue. First is the estate's claim to recover the $470,000.00 as a pre-petition preference transfer. The second is CI's claim against IHDE based on the alleged contracts between the parties. Each is addressed in turn.

At this point, CI has conceded several of the elements of IHDE's preference transfer claim to recover the Sheriff funds. The issues that remain, however, include whether the Debtor actually

---

[1] For purposes of saving on printing/mailing costs, the mailed version of this Motion does not include the exhibit. Parties receiving the mailed copy of this Motion also received a mailed copy of the Debtor's Amended Chapter 11 Plan (Docket No. 68) and can find the settlement agreement exhibit attached to the Plan as Exhibit B.

MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) – Page 3

had an interest in the funds taken (i.e., were they "earmarked" for CI by the Idaho Department of Health & Welfare), and whether CI actually was treated better with the receipt of the funds than they would have been had the transfer not occurred and the case been under Chapter 7. ( In other words, the first and last statutory elements of the claim.)  CI argues that because the funds were earmarked, they were not property of the debtor.  However, because the funds were commingled in the Debtor's bank account with other funds that undoubtedly were property of the Debtor, there is a tracing analysis that must be done.  Whether the Debtor can show that the lowest intermediate balance (between the deposit of the IDHW funds, and the attachment of funds by the Sheriff) was low enough to otherwise defeat CI's claim entirely is doubtful.  There likely was some intermediate balance in the account, which could potentially leave some portion of the funds attached subject to this defense.  Additionally, while the Debtor asserts that the funds in question were not capable of being "earmarked", the Ada County judge who ordered the attachment did make a finding that they were earmarked funds.  Consequently, CI may have a good argument that some (or potentially all) of the funds were not the Debtor's property and therefore not subject to return as a preference payment.  This weighs in favor of approving the compromise.

      The Debtor believes that CI's other defense (that it was no better off with the receipt of the funds) likely fails.  The Debtor does not have sufficient assets to fully pay all creditors.  Further, the Debtor estimates that if it recovered the funds and Chapter 7 liquidation took place, creditors (including CI) would be paid just 17% of their total claims.  On the other hand, CI's attachment of the funds allowed it to recover nearly 50% of its claim amount pre-petition.  Consequently, CI likely would lose this defense if the Debtor's estimate of creditor's recovery is correct.

      Conversely, CI asserts that the amount of creditors' recovery might be substantially greater than the amount estimated by the Debtor – and in excess of CI's percentage recovery as a result of

MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) – Page 4

its prejudgment attachment – if (i) the Debtor actively pursued certain other possible avoidance actions identified by CI in its objection to the Debtor's initial Chapter 11 plan, (ii) disputed the amounts of certain other creditors' claims, and (iii) attributed higher values to the Debtor's intangible assets.  The Debtor disputes each of these points (i.e., whether other avoidance actions actually exist, whether certain other creditor's claims are subject to reasonable dispute, and whether the Debtor's intangible assets have any significant value).  Nevertheless, although the Debtor believes that it would win in a trial of these issues, it recognizes the risk that CI might prevail and the certainty that the litigation of the issues would require substantial time and legal expense.

The other claim to be litigated would be CI's actual claim in the bankruptcy case.  CI demanded that it be paid in advance for all three years of its SaaS license agreements with IHDE, using funds allegedly remitted by IDHW to IHDE.  IHDE denies that it had a binding 3-year prepayment agreement with CI and alleges that it had a 3-year agreement with CI with an option to terminate or renew the agreement at the conclusion of each year of the 3-year agreement term.  Based on this dispute, CI terminated the SaaS services it was delivering to IHDE and later filed the Ada County Case.  Both parties believe strongly that their interpretation of the contract is correct.  However, CI already succeeded in getting the Ada County judge to recognize its claim enough to issue a pre-judgment writ of attachment.  This additional hurdle would have to be overcome by IHDE in getting CI's claim disallowed (either in full or in part).  Through the compromise, CI is waiving any further claim against the Debtor.  Consequently, the uncertainty of litigating CI's claim also weighs in favor of approving the compromise.

### **DIFFICULTY IN ENFORCEMENT OF A JUDGMENT**

In the event the Debtor prevailed on the preference transfer claims, the Ada County Sheriff still holds the funds in question, so recovery of those funds should be straightforward. Additionally, in the event the Debtor prevailed in objecting to CI's claim, it simply means CI does not participate in the Debtor's plan. Neither of these issues would be difficult to enforce, and this factor does not weigh in favor, or against, approval of the compromise.

### **COMPLEXITY, EXPENSE, AND DELAY OF THE LITIGATION**

The parties' respective claims are in large part highly factual in nature and will require testimony from individuals and potentially experts. Additionally, the preference claim may require sophisticated financial review of the Debtor's bank accounts. There is no current trial date set for litigating these claims. Consequently, there would be some delay in getting a trial date and pursuing the claims through trial. There would likely be significant discovery and motion practice prior to trial on the issues, thus driving up the expense to the estate (through attorney fees).

Further, depending on the result of trial in this Court, either party would likely pursue an appeal of the issues, thus adding additional delay and expense to the process. This delay could prove fatal to the Debtor. As outlined in the Debtor's financial projections attached to its plan, the Debtor's ability to fund plan payments and other operating expenses depends on recovery of the preference funds. Delay in that recovery would likely jeopardize the Debtor's ability to continue operating. On the other hand, quick recovery of the settlement funds will ensure the Debtor continues to operate successfully for the life of the plan (and longer).

Approving this Compromise will allow the Debtor to move towards confirmation of its plan and eliminate one of the largest unsecured claims in the case. The Debtor believes these

MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) – Page 6

factors weigh in favor of approving the Compromise and is in the best interest of all interested parties.

## PARAMOUNT INTEREST OF CREDITORS

By this Compromise, the bankruptcy estate will be receiving approximately $235,000.00, and be eliminating one of the estate's largest unsecured claims. Of course, continuing with the litigation could result in additional scenarios: the estate may recover the entire $470,000.00 (or some amount between that and $235,000.00); the estate may also be faced with an unsecured claim of more than $1,000,000.00. There is a range of scenarios that could ultimately result – all with the additional administrative expenses incurred in pursuing the litigation. On the other hand, with the compromise, all parties can adequately move forward knowing what their plan payments will actually be and that the Debtor has a better ability to fund its plan.

Without the compromise, the Debtor estimates that CI would still be paid anywhere between $150,000.00 -$515,000.00 (depending on the recovery of the preference funds, allowance of CI's claim, and whether a plan is confirmed or the case is liquidated). The settlement payment, therefore, falls on the lower end of that scale and is a certainty. Additionally, the settlement payment to CI represents approximately 25% of CI's total claim (not counting any additional attorney fees or interest that may have accrued on CI's claim). With the approval of the compromise, and elimination of CI's claim in the bankruptcy case, the Debtor projects other unsecured creditors will receive approximately 24% of their total claim amounts paid through the plan. (On the other hand, without the settlement and CI's claim remaining fully valid, other unsecured creditors would only receive 12% of their total claim amounts). With the additional administrative expenses of litigating the CI claims, this percentage amount may ultimately be even

MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) – Page 7

lower. For these reasons, the Debtor believes this factor also weighs in favor of approving the compromise.

## CONCLUSION

For the above-stated reasons, the Debtor asserts that the proposed compromise is a fair and equitable resolution of the matters and is in the best interests of the creditors of the bankruptcy estate. Based on the foregoing, the Debtor respectfully requests the Court enter an order granting the Motion and approving the Compromise.

DATED this 31st day of March, 2023.

        /s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2023, I filed the foregoing MOTION FOR APPROVAL OF COMPROMISE electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Jon B Evans | jb.evans@stoel.com |
| Jaclyn T. Gans | jtg@elamburke.com |
| Matthew W Grimshaw | matt@grimshawlawgroup.com |
| Nicole C Hancock | nicole.hancock@stoel.com |
| Chad Moody | crm@johnsonmaylaw.com |
| Jason Ronald Naess | jason.r.naess@usdoj.gov |
| Sheila Rae Schwager | sschwager@hawleytroxell.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |

Any others as listed on the Court's ECF Notice.

        /s/ Matt Christensen
Matthew T. Christensen

MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS) – Page 8

# EXHIBIT A

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (this "Agreement") is made and entered into as of the 29 day of March, 2023, by and between **IDAHO HEALTH DATA EXCHANGE, INC.**, an Idaho nonprofit corporation ("IHDE" or the "Debtor"), and **CUREOUS INNOVATIONS, INC.**, a Delaware corporation ("CI"). IHDE and CI are collectively referred to herein as the "Parties" and individually as a "Party".

## RECITALS

**A.**  **WHEREAS,** IHDE is a state designated internet-based health information exchange designed to provide statewide coordination of health care in Idaho. IHDE previously filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Idaho (the "Bankruptcy Court"), Case No. 22-00355-JMM (the "Bankruptcy Case"); and

**B.**  **WHEREAS,** CI is a healthcare technology and data company that licenses and provided subscriptions for interoperability software, and previously contracted with IHDE to provide software solutions; and

**C.**  **WHEREAS,** prior to the filing of the Bankruptcy Case, CI filed a complaint against IHDE in Ada County Case No. CV01-21-15209 (the "Ada County Case"). In the Ada County Case, CI obtained a pre-judgment writ of attachment which directed the Ada County Sheriff to seize funds from IHDE's bank account; and

**D.**  **WHEREAS,** pursuant to the writ of attachment, the Ada County Sheriff seized $469,767.83 in funds from IHDE's bank account, which the Ada County Sheriff continues to hold pending further court order (the "Seized Funds"); and

**E.**  **WHEREAS,** IHDE filed an adversary proceeding in the Bankruptcy Court seeking to recover the Seized Funds pursuant to 11 U.S.C. §547 – Adversary Case No. 22-06018-JMM (the "Adversary Case"). In the Adversary Case, IHDE also objected to CI's claim in the Bankruptcy Case; and

**F.**  **WHEREAS,** CI responded to the Adversary Case and disputes IHDE's avoidance claim and objection to CI's claim; and

**G.**  **NOW,** the Parties desire to settle and resolve all of the issues between them outlined in the Ada County Case, the Bankruptcy Case, the Adversary Case or otherwise pertaining to the relationship of the Parties on or before the date of this Agreement (the "Dispute") on the terms set forth below.

## AGREEMENTS AND RELEASES

**NOW, THEREFORE**, in consideration of the mutual promises, terms, obligations and undertakings set forth herein, and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the Parties agree as follows:

1. <u>Specific terms of Agreement</u>:

    a. The Seized Funds shall be split between the Parties, with CI receiving $235,000.00 and IHDE receiving the balance of $234,767.83.

    b. Upon Bankruptcy Court approval of this compromise (as contemplated below), the Parties agree to submit the Stipulation and Order attached here as Exhibit 1 (which includes a proposed order) to the Ada County court in the Ada County Case directing the Ada County Sheriff to release the funds as set forth above.

    c. Upon the Sheriff's release of the funds as set forth above:

        i. the Parties agree to jointly seek dismissal of the Ada County Case with prejudice, with each Party bearing its own costs and attorney fees related to that case;

        ii. CI agrees to withdraw its Proof of Claim filed in the Bankruptcy Case and not pursue any further claims against IHDE or its officers, directors, employees or other representatives with respect to the Dispute, including voting on or objecting to any Chapter 11 plan proposed by IHDE; and

        iii. the Parties agree to jointly seek dismissal of the Adversary Case, with each Party bearing its own costs and attorney fees related to that case.

    d. As soon as practicable following execution of this Agreement by the Parties, CI will identify to IHDE those documents and/or statements on IHDE's website and in IHDE's Chapter 11 plan that CI considers inaccurate or offensive to CI (the "Offensive Material") and will propose specific changes to the language in the Chapter 11 plan to make statements relating to the Dispute purely factual in nature and neutral in tone (the "Plan Revisions"). Promptly following Bankruptcy Court approval of this compromise, IHDE will remove the Offensive Material from its website, will incorporate the Plan Revisions into its amended Chapter 11 Plan, and will not publish any disparaging statements relating to CI.

2. <u>Mutual Releases</u>: Contingent only upon Bankruptcy Court approval of this compromise and the release of funds by the Ada County Sheriff, each Party for itself, and for its members, managers, employees, agents, affiliates, subsidiaries, successors, and assigns, does hereby release, waive and forever discharge, and covenant not to sue the opposing Party together

Settlement Agreement (IHDE/CI) - Page 2 of 8

with its members, managers, affiliates, family members, successors, assigns and transferees and all of their agents, partners, current or former advisors, current or former attorneys, current or former members and employees, and current and former managers, with respect to each and every claim, counterclaims, remedies, liabilities, debts, demands, costs, expenses, and attorneys' fees, of any kind or nature whatsoever, disputed or undisputed, liquidated or unliquidated, known or unknown, express or implied, legal or equitable, arising out of or relating to the Dispute and otherwise pertaining to the relationship of the Parties on or before the date of this Agreement.

3. Contingent. The Parties agree that the terms of this Agreement are contingent upon Bankruptcy Court approval pursuant to Fed. R. Bankr. Proc. 9019. As soon as possible after this Agreement is executed, IHDE agrees to file a motion in the Bankruptcy Case, in form and substance reasonable acceptable to CI and its counsel, seeking Bankruptcy Court approval of the compromise reflected by this Agreement.

4. Recitals Incorporated by Reference. The Parties incorporate into this Agreement, as part of the terms of this Agreement, the "Recitals" set forth above.

5. Representations and Warranties. The Parties each warrant that they have agreed to enter into this Agreement knowingly and voluntarily and not in reliance upon any promise, inducement, or agreement, other than that which is specified herein. The Parties further warrant that they have full authority to enter into the terms of the compromise, pursuant to any governing documents (if any) of the Parties.

6. Cause of Action for Breach. If either Party breaches this Agreement, the other Party shall have a cause of action for the breach. In such an action, the prevailing Party shall be entitled to recover from the breaching Party, in addition to any other relief provided by law or equity, such costs and expenses (including reasonable attorney's fees) as may be incurred by the prevailing Party in enforcing or otherwise applying the terms of this Agreement. Any action under this paragraph shall not in any way invalidate or nullify the settlement or any other terms of this Agreement.

7. Entire Agreement. This Agreement contains the entire understanding between the Parties and supersedes all pre-existing or contemporaneous agreements or understandings, oral or written, respecting the subject matter hereof. Further, the Parties agree that this Agreement was negotiated by the Parties, and therefore shall not be interpreted against any one Party as the drafter of the Agreement.

8. No Oral Modifications. This Agreement may be modified in whole or in part only by an agreement in writing executed by the Parties or their counsel.

9. Independent Legal Advice. Each of the Parties have received or declined to receive independent legal advice from legal counsel of their choice with respect to the advisability of making the settlement and release provided for herein and with respect to the advisability of executing this Agreement.

10. Severability. The Parties acknowledge that the purpose of this Agreement is to settle disputes and release claims, and in the event for any reason that any provision or portion of

this Agreement shall be found to be void or invalid, the Parties will continue to interpret this Agreement to accomplish the stated purpose.

11. <u>Investigation</u>. Each of the Parties has read the Agreement carefully, knows and understands the contents thereof, and has made such investigation of the facts pertaining to the settlement and this Agreement and of all matters pertaining hereto, or impacted hereby, as it deems necessary or desirable. Neither Party has relied upon any statement, representation, or promise of the other Party, or of any representative or attorney for the other Party, in executing this Agreement or in making the settlement provided for herein.

12. <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Idaho in all respects, including matters of construction, enforcement and performance, without regard to principles of conflicts of laws. The Parties agree that the venue of any action to enforce this Agreement shall be in the Bankruptcy Court, so long as the Bankruptcy Case is pending, following which it shall be in the courts located in Ada County, Idaho.

13. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, transmitted by facsimile, pdf or otherwise, each of which shall be deemed an original, and both of which together shall constitute a single instrument.

14. <u>Waiver</u>. Failure of a Party to exercise a right upon default of the other Party shall not be construed as a waiver of a right to insist upon full performance of all the terms and conditions of this Agreement.

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed the day and year first above written.

_____
**IDAHO HEALTH DATA EXCHANGE, INC.**
By: Jesse Meldru, Director of Finance


_____
**CUREOUS INNOVATIONS, INC.**
By: _____

Its: _____

Settlement Agreement (IHDE/CI) - Page 4 of 8

this Agreement shall be found to be void or invalid, the Parties will continue to interpret this Agreement to accomplish the stated purpose.

      11.    <u>Investigation</u>. Each of the Parties has read the Agreement carefully, knows and understands the contents thereof, and has made such investigation of the facts pertaining to the settlement and this Agreement and of all matters pertaining hereto, or impacted hereby, as it deems necessary or desirable. Neither Party has relied upon any statement, representation, or promise of the other Party, or of any representative or attorney for the other Party, in executing this Agreement or in making the settlement provided for herein.

      12.    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Idaho in all respects, including matters of construction, enforcement and performance, without regard to principles of conflicts of laws. The Parties agree that the venue of any action to enforce this Agreement shall be in the Bankruptcy Court, so long as the Bankruptcy Case is pending, following which it shall be in the courts located in Ada County, Idaho.

      13.    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, transmitted by facsimile, pdf or otherwise, each of which shall be deemed an original, and both of which together shall constitute a single instrument.

      14.    <u>Waiver</u>. Failure of a Party to exercise a right upon default of the other Party shall not be construed as a waiver of a right to insist upon full performance of all the terms and conditions of this Agreement.

      IN WITNESS WHEREOF the Parties have caused this Agreement to be executed the day and year first above written.

_____
**IDAHO HEALTH DATA EXCHANGE, INC.**
By: Jesse Meldru, Director of Finance


*Shaun T Alfreds*
_____
**CUREOUS INNOVATIONS, INC.**
By: Shaun T. Alfreds

Its: President and CEO

Settlement Agreement (IHDE/CI) - Page 4 of 8

**Exhibit 1**

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| CUREOUS INNOVATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>IDAHO HEALTH DATA EXCHANGE, INC, an Idaho corporation,<br><br>Defendant | Case No. CV01-21-15209<br><br>STIPULATION FOR RELEASE OF SEIZED FUNDS |

The parties to this proceeding, CUREOUS INNOVATIONS, INC. ("Cureous"), and IDAHO HEALTH DATA EXCHANGE, INC. ("IHDE"), by and through their respective counsel of record, stipulate and agree as follows:

1. This Court previously entered a prejudgment Writ of Attachment, dated May 19, 2022. After that date, and pursuant to that Writ, the Ada County Sheriff seized $469,767.83 from IHDE's bank account at DL Evans bank, which account the bank subsequently closed. The Ada County Sheriff continues to hold the seized funds.

2. On August 12, 2022, IHDE filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Idaho, thereby staying this case.

3. Based on an Agreement between the parties, which agreement has been approved by the Bankruptcy Court in IHDE's bankruptcy case, the parties agree that the funds should be released to the parties, with Cureous receiving $235,000.00 of the seized funds, and IHDE

receiving $234,767.83 of the seized funds. The parties stipulate to entry of an order by this Court in the form attached here as *Exhibit A.*

    4.    Upon the release of funds by the Ada County Sheriff, the parties agree to seek dismissal of this case with prejudice and with each party paying its own attorney fees and costs.

DATED this ___ day of _____, 2023.

                                                NICOLE C. HANCOCK
                                               Attorney for Cureous Innovations, Inc.

DATED this ___ day of _____, 2023.

                                                MELODIE A. MCQUADE
                                               Attorney for Idaho Health Data Exchange, Inc.

# EXHIBIT A

Settlement Agreement (IHDE/CI) - Page 7 of 8

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| CUREOUS INNOVATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>IDAHO HEALTH DATA EXCHANGE, INC, an Idaho corporation,<br><br>Defendant | Case No. CV01-21-15209<br><br>**ORDER FOR RELEASE OF SEIZED FUNDS** |

Having reviewed the Stipulation for Release of Seized Funds filed by the parties, and for good cause,

IT IS HEREBY ORDERED that the pre-judgment Writ of Attachment previously entered in this case, dated May 19, 2022, is DISCHARGED and any funds seized by the Ada County Sheriff pursuant to such Writ, shall be IMMEDIATELY RELEASED as follows: The Ada County Sheriff shall pay $235,000.00 of the seized funds to Cureous Innovations, Inc., and the balance of $234,767.83 to Idaho Health Data Exchange, Inc.

DATED this _____ day of _____, 2023.

                                                                    CYNTHIA YEE-WALLACE
                                                                    District Judge
                                                                    Fourth Judicial District