Jason R. Naess, ISBN 8407
Assistant United States Trustee
Brett R. Cahoon, ISBN 8607
Andrew S. Jorgensen, ISBN 8695
United States Department of Justice
Office of the United States Trustee
550 W. Fort St., Ste. 698
Boise, Idaho 83724
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the Acting United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re: | Case No. 22-00355-JMM |
| IDAHO HEALTH DATA EXCHANGE, INC., | Chapter 11 (Subchapter V) |
| Debtor | |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO MOTION FOR APPROVAL OF COMPROMISE (CUREOUS INNOVATIONS)**

The Acting United States Trustee ("UST"), hereby objects to entry of an Order approving the Motion for Approval of Compromise (the "Compromise Motion"), Dkt. No. 71, prior to the confirmation of Debtor's First Amended Plan of Reorganization, Docket No. 68 (the "Amended Plan").

The Compromise Motion seeks to establish how Cureous will be treated under Debtor's eventual chapter 11 plan.  Under the compromise, Cureous will receive a recovery of approximately 25% of its claim.  Dkt. No. 71 at 7.  In the Amended Plan, Debtor's general unsecured creditors are told they will receive recoveries of roughly 24% of each of their respective claims.  Dkt. No. 68 at 60.  The Compromise Motion emphasizes that treatment in

- 1

attempting to persuade parties in interest, including Debtor's general unsecured creditors, to support the Compromise Motion.  Dkt. No. 71 at 7-8 ("With the approval of the compromise, and elimination of [Cureous'] claim in the bankruptcy case, the Debtor projects other unsecured creditors will receive approximately 24% of their total claim amounts paid through the plan. (On the other hand, without the settlement and [Cureous'] claim remaining fully valid, other unsecured creditors would only receive 12% of their total claim amounts).").

While noting that, in previous versions of the Amended Plan, Debtor classified Cureous with its general unsecured creditors and asserted those claims were substantially similar,[1] *see* Dkt. No. 31 and § 1122, the UST takes no position on whether Cureous' claim is substantially similar to the claims of Debtor's general unsecured creditors.  At the same time, the UST is concerned that Debtor's general unsecured creditors are being told they will receive nearly similar treatment to Cureous (*i.e.,* recovery of approximately 24% of their respective claims), which likely makes the Cureous compromise and/or their own treatment under the Amended Plan more palatable, when it appears the 24%-recovery figure is premised on improper and unauthorized preconfirmation payment of a select few creditors' prepetition claims.

The Amended Plan's Liquidation Analysis reveals, for the first time, improper preconfirmation payments by Debtor to some of its general unsecured creditors, paying those selected creditors' prepetition debts in full.  Because of those payments, Debtor's Amended Plan cannot be confirmed.  *See* §§ 1129(a)(1), (2); 1191.  If Debtor has any hope of getting a plan confirmed, it must remedy the improper payments in a manner so that the plan complies with the Code and Debtor, as proponent of the plan, complies with the Code.  *See* § 1129(a)(1), (2).

---

[1] Debtor continues to refer to its general unsecured creditors as its "*other* unsecured creditors," seemingly implying Debtor continues to consider Cureous to be a general unsecured creditor as well.  *See generally* Dkt. No. 71 (emphasis added).

- 2

Remedying those payments, however, will potentially adjust the recoveries to Debtor's general unsecured creditors. If Cureous' treatment under the compromise will be significantly different, *i.e.,* better, than the treatment of general unsecured creditors, parties in interest should be informed of that disparity before evaluating the appropriateness of the compromise – especially since the argument for approval of the Compromise Motion relies upon Cureous receiving a recovery that is only roughly 1% better than the recovery seen by general unsecured creditors.

### **Debtor's Current Plan and Its Conduct in Making Payments to Two Creditors Does not Comply with the Code**

Chapter 11 debtors are debtors in possession, with a fiduciary duty to serve the interests of all the creditors of the estate. *See Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. of Cal. (In re Guy F. Atkinson Co. of Cal.)*, 242 B.R. 497, 502-03 (9th Cir. BAP 1999). Among the duties owed to creditors as a result of that fiduciary relationship is a duty of impartiality. *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995). In addition, the Bankruptcy Code does not allow preferential payment of some prepetition obligations over others in contravention of the Code's claims priority scheme or outside of a confirmed plan of reorganization. *In re Berry Good, LLC*, 400 B.R. 741, 746 (Bankr. D. Ariz. 2008) (citing *B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.)*, 713 F.2d 534, 537 (9th Cir. 1983); *Gordon v. Hines (In re Hines)*, 147 F.3d 1185, 1191 (9th Cir. 1998)).

In general, a debtor's schedule of liabilities constitutes prima facie evidence of the validity and amount of the claims of creditors, unless the claims are scheduled as disputed, contingent, or unliquidated. Rule 3003(b)(1). If a creditor's claim is scheduled, and is not marked as disputed, contingent, or unliquidated, the creditor is excused from having to file a proof of claim and its claim will be treated as an allowed claim, for the scheduled amount, for the purposes of voting on, and distribution under, a chapter 11 plan. *See* Rule 3003(b)(1), (c)(2).

- 3

If a creditor files a proof of claim, the proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f).

Debtor has thirteen creditors. *See* Dkt. No. 1, Sch. E/F; Dkt. No. 68 at 60. In its Schedules, Debtor identified all as unsecured. Dkt. No. 1. Notably, Debtor listed the following claims without marking any of them as disputed, contingent, or unliquidated:

| Creditor | Schedule E/F Amount |
|---|---|
| 4medica, Inc. | $45,000.00 |
| Amazon Web Services | $3,418.06 |
| Paramount Consulting Solutions | $71,368.35 |

Dkt. No. 1 at, Sch. E/F. Eight of Debtor's other general unsecured creditors were also scheduled without the Debtor marking the claims as disputed, contingent, or unliquidated. Dkt. No. 1, Sch. E/F. The creditors whose claims were marked as disputed and unliquidated each filed proofs of claim. *See* Dkt. No. 1, Sch. E/F; Proofs of Claim 2, 5. Debtor has only objected to the claim of one creditor: Cureous. *See* Adv. Pro. 22-06018-JMM, Dkt. No. 1.

The Liquidation Analysis attached to Exhibit F of the Amended Plan attempts to indicate that all general unsecured creditors will receive roughly as much as Cureous if the compromise is approved. *See* Bankr. No. 22-00355-JMM, Dkt. No. 68 at 60 (indicating that general unsecured creditors will receive a recovery of 24% of their claim under the Amended Plan). The Compromise Motion reiterates the same. Dkt. No. 71 at 7-8. That analysis, however, relies on certain of Debtor's general unsecured creditors, 4medica, Inc.; Amazon Web Services; and Paramount Consulting Solutions, not receiving any payments. Dkt. No. 68 at 60. If those creditors were to receive payments under the Amended Plan, the distributions to general unsecured creditors would be reduced to some amount less than 24% of their claims. As explanation for the non-payment to the three creditors, Debtor included a "Note" under the

Liquidation Analysis indicating:

> 4medica and Amazon Web Services were paid as continuing contracts; Paramount Consulting has waived any pre-petition claim against Debtor.

Dkt. No. 68 at 60.  *Id.*

Assuming, without conceding, Debtor's separate classification of Orion Health and Cureous is appropriate, Debtor has eleven creditors that would be considered part of Class 3, the General Unsecured Class, of the Amended Plan.  Dkt. No. 68 at 10.  Yet, and despite its duty of impartiality to all creditors, Debtor apparently paid the claims of two creditors[2] in full outside of a confirmed plan or other authorization from the Court.  *See id* at 60.  The combined claims of those preferred creditors totaled nearly $50,000.  *Id.*

Debtor's explanation for paying 100% of those two creditors' claims while all other general unsecured creditors will only receive roughly 24% of their claims is that the claims were paid as "continuing contracts."  It is unclear, but appears Debtor may be asserting some type of "critical vendor" theory.  The Code, however, does not allow courts to overrule its priority scheme by favoring one class of unsecured creditors, even "critical" ones, over another – not even the Court's general equitable power under § 105(a) extends that far.  *In re Berry Good, LLC*, 400 B.R. at 746 (citing *In re B & W Enters.*, 713 F.2d at 537; *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004); *In re Oxford Mgmt. Inc.*, 4 F.3d 1329, 1333-34 (5th Cir. 1993); *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir. 1987)).  Of course, Debtor did not seek Court approval, and is still not seeking Court approval, of the payments to Debtor's preferred creditors in this case.  It simply made the payments, all without disclosing

---

[2] The UST does not specifically address the supposed waiver by Paramount Consulting in this Objection, though notes that, from the docket, there is no indication that Paramount Consulting has waived any prepetition claim. There is no stipulation between Paramount Consulting and Debtor to that effect, and Debtor has not objected to Paramount Consulting's claim.

the same to anyone other than in a "Note" at the bottom of the 60th page of a 60-page chapter 11 plan.

## CONCLUSION

Because the Amended Plan does not comply with the Code, and because the Debtor's conduct in making the preferential preconfirmation payments does not comply with the Code, the Amended Plan cannot be confirmed. §§ 1129(a)(1), (2); 1191. At this point, it is unknown whether the Debtor can remedy the unauthorized payments to 4medica Inc. and Amazon Web Services. If it can somehow remedy that conduct, it is anticipated the expected payments to Debtor's general unsecured creditors will change.

The Compromise Motion relies on general unsecured creditors receiving a roughly 24% payout on their respective claims in arguing for the approval of the motion. The Compromise Motion should not be granted until any revised anticipated payment amounts are disclosed and parties in interest can evaluate the propriety of the compromise considering that reality.

Date: April 21, 2023       GREGORY M. GARVIN
Acting United States Trustee for Region 18

/s/ Jason R. Naess
JASON R. NAESS,
Attorney for the Acting United States Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ___April 21, 2023___ I caused the foregoing document to be filed with the Court's CM/ECF system which causes a copy of the foregoing to be served by electronic means on the parties reflected on the Notice of Electronic Filing.

Date: __April 21, 2023__

/s/
JASON R. NAESS